**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TERRY W. GROVES, | ) | |
| JANET ROBINSON, | ) | |
| JOHNNY HUBBELL, | ) | |
| ROBERT PARKS, | ) | |
| DAVIS LANTHRIPE, | ) | |
| CHRIS CARSON, | ) | |
| DONNA GOLL, | ) | |
| DENVIL JOE TINCHER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-07-28-M |
| | ) | |
| GENERAL MOTORS CORP., | ) | |
| a foreign corporation, | ) | |
| UNITED AUTOMOBILE, AEROSPACE | ) | |
| and AGRICULTURAL IMPLEMENT | ) | |
| WORKERS, INTERNATIONAL UNION, | ) | |
| ("UNITED AUTO WORKERS") acting | ) | |
| through LOCAL 1999, a union, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This case is scheduled for trial on the Court's April 2009 trial docket.

Before the Court are plaintiffs' Motion for Partial Summary Judgment [docket no. 60],

defendant United Automobile, Aerospace and Agricultural Implement Workers, International

Union's ("Union") Motion for Summary Judgment [docket no. 61], and defendant General Motors

Corp.'s ("GM") Motion for Summary Judgment [docket no. 63].  These motions have been fully

briefed.  Based upon the parties' submissions, the Court makes its determination.

I.    INTRODUCTION

Each plaintiff was an employee of GM and a Union member who was offered participation

in a Special Attrition Plan ("SAP").[1]  Option 4 of the SAP provides for a one-time severance payment of $70,000 to persons with less than ten years of seniority and/or credited service or $140,000 to persons with ten or more years of seniority and/or credited service.[2]  Each plaintiff elected Option 4, stating that his or her credited service was ten years or more, and each signed their elections on dates from approximately June 21, 2006 to June 23, 2006.  On August 14, 2006, each plaintiff was mailed a notice reducing his or her credited service to less than ten years.[3]  As a result, each plaintiff received a severance payment of only $70,000.

Plaintiffs allege that they were each promised in connection with their hire as permanent employees that they would be given credit as part of their annual credited service for the time each had previously worked as a temporary employee.  Further, over the years, each plaintiff had received annual statements reflecting that he or she was credited for work as temporary employees.  Plaintiffs, thus, allege that they were entitled under the SAP to a severance payment of $140,000.

Plaintiffs, therefore, filed the instant action, asserting the following claims:

A)  Breach of an executed oral agreement confirmed by later writing to provide each Plaintiff with credited service which included the time worked as a temporary employee;

B)  Promissory estoppel to enforce oral and written promises and representations that each employee had credited service which included their periods as temporary employees;

C)  Breach of a separation program under which each Plaintiff

---

[1]For purposes of the motions for summary judgment, plaintiffs do not contest that the SAP was collectively bargained.

[2]The amount received under Option 4 was based on the greater of either seniority or credited service of the selecting employee.  Having reviewed the parties' submissions, it appears that plaintiffs are not asserting that they are entitled to the $140,000 severance payment based upon seniority but only based upon credited service.

[3]Each reduction was based on removing credit for time worked by that plaintiff as a temporary employee prior to becoming a permanent employee.

2

was entitled to additional compensation in association with
each Plaintiff's separation from employment;

D)      Failure to pay compensation as defined by 40 O.S. §§ 165.1,
165.3, 165.9, 197.4, 197.9 with an entitlement to the amounts,
liquidated damages, costs and attorney's fees;

E)      Tortious breach of each Plaintiff's contract rights, and

F)      In the alternative, a hybrid action under 29 U.S.C. § 185.

Plaintiffs' Second Amended Complaint [docket no. 51-2] at 2-3.  Plaintiffs now move for (1)

summary judgment against GM as to plaintiffs' state law contract claims based on oral contracts or

implied contracts via promissory estoppel; (2) summary judgment against GM as to plaintiffs' § 301

claim as to liability for breach of contract established via federal common law promissory estoppel;

(3) summary judgment as to any affirmative defense by either defendant based on a failure to

exhaust administrative remedies, and (4) summary judgment as to GM's affirmative defense

asserting a release of plaintiffs' claims[4].[5]  The Union now moves this Court for summary judgment

against plaintiffs as to their § 301 claim, the only claim asserted against the Union.  Finally, GM

now moves this Court for summary judgment on all causes of action set forth by plaintiffs against

GM.

## II.     SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law.  The moving

party is entitled to summary judgment where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party.  When applying this standard, [the Court] examines

---

[4]In its response, GM states that it does not intend to pursue a release defense.  GM's Brief
in Opposition to Plaintiffs' Motion for Summary Judgment at n.11.  The Court, therefore, finds that
plaintiffs are entitled to summary judgment as to GM's release defense.

[5]Plaintiffs are not seeking summary judgment as to the amount of their damages.

the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    DISCUSSION

    A.    Preemption

GM asserts that plaintiffs' state law claims of breach of contract, tortious breach of contract, promissory estoppel, and failure to pay compensation are preempted by federal labor law. Plaintiffs, however, contend that their state law claims are not preempted.

Section 301 of the Labor Management Relations Act ("LMRA") preempts "any state law claims that are 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Johnson v. Beatrice Foods Co.*, 921 F.2d 1015, 1019 (10th Cir. 1990) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).

> The [Supreme] Court has made it clear, however, that not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law. Indeed, preemption arises only when an evaluation of the tort claim is *inextricably intertwined* with consideration of the terms of the labor contract. [A]s long as the

4

> state-law claim can be resolved without interpreting the agreement
> itself, the claim is "independent" of the agreement for § 301 pre-
> emption purposes.

*Mowry v. United Parcel Serv.*, 415 F.3d 1149, 1152 (10th Cir. 2005) (internal quotations and citations omitted) (emphasis in original).

Having carefully reviewed the parties' submissions, the Court finds that plaintiffs' state law claims are preempted. Specifically, the Court finds that an evaluation of plaintiffs' state law claims for breach of contract, tortious breach of contract, promissory estoppel, and failure to pay compensation is inextricably intertwined with a consideration of the terms of the SAP, and to some extent even the terms of the 2003 GM-UAW Pension Plan ("Pension Plan")[6], which defines "credited service," and the 2003 GM-UAW National Agreement ("National Agreement")[7], which defines "seniority," a term referenced in the Pension Plan's definition of credited service.

In determining whether GM breached the alleged oral agreement to provide each plaintiff with credited service which included the time worked as a temporary employee by not including the time worked as a temporary employee in its determination of credited service in relation to the severance payment under the SAP, the Court and/or the jury would necessarily have to interpret the SAP, and specifically what the applicable definition of "credited service" is under the SAP and whether plaintiffs' alleged oral agreement is incorporated into the SAP. For example, the SAP provides that the options available are to be "determined solely by the written provisions of the Memorandum of Understanding – GM-UAW Plants, the 2003 GM-UAW National Agreement, the 2003 GM-UAW Pension Plan, and other applicable benefit programs, and the March 22, 2006 letter

---

[6]The Pension Plan is a collectively bargained agreement.

[7]The National Agreement is a collectively bargained agreement.

relating to the Mutually Satisfactory Retirement for UAW-GM Plants." Plaintiffs assert that their oral agreement is an "other applicable benefit program" that is to be considered when interpreting the options available under the SAP. The Court finds that the meaning of the term "other applicable benefit program" is not clear and would necessarily have to be interpreted in order to resolve plaintiffs' breach of contract claim.

Further, to establish their claim of promissory estoppel, plaintiffs must establish (1) a clear and unambiguous promise; (2) foreseeability by the promisor that the promisee would rely upon it; (3) reasonable reliance upon the promise to the promisee's detriment, and (4) hardship or unfairness can be avoided only by the promise's enforcement. *Barber v. Barber*, 77 P.3d 576, 579 (Okla. 2003). The Court finds that the SAP would necessarily have to be interpreted in order to determine whether plaintiffs <u>reasonably</u> relied upon the promise to their detriment and whether hardship or unfairness can be avoided only by the promise's enforcement. Specifically, the Court finds that a determination would necessarily need to be made as to whether it was reasonable for plaintiffs to believe that the SAP incorporated the alleged oral agreement's definition of "credited service", thus placing the issue of what a reasonable interpretation of the SAP is at the heart of plaintiffs' promissory estoppel claim.

Finally, Okla. Stat. tit. 40, § 165.3 provides, in pertinent part:

> A. Whenever an employee's employment terminates, the employer shall pay the employee's wages in full, less offsets and less any amount over which a bona fide disagreement exists, as defined by Section 165.1 of this title, at the next regular designated payday established for the pay period in which the work was performed ....
>
> B. If an employer fails to pay an employee wages as required under subsection A of this section, such employer shall be additionally liable to the employee for liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such

> failure shall continue after the day the wages were earned and due if the employer willfully withheld wages over which there was no bona fide disagreement; or in an amount equal to the unpaid wages, whichever is smaller. . . .

Okla. Stat. tit. 40, § 165.3.  As set forth above, whether plaintiffs were entitled to an additional $70,000 in severance (wages) based upon either breach of contract or promissory estoppel requires an interpretation of, at a minimum, the SAP.  Further, the Court finds that whether a bona fide disagreement existed as to the payment of the additional $70,000 requires an interpretation of the SAP, the Pension Plan, and the National Agreement.

Accordingly, the Court finds that plaintiffs' state law claims for breach of contract, tortious breach of contract, promissory estoppel, and failure to pay compensation are preempted and GM is entitled to summary judgment as to these claims based upon said preemption.

B.     Federal Claims

1.     Failure to exhaust defense

Plaintiffs assert that GM's failure to exhaust defense is without merit and that they are entitled to summary judgment as to this defense.  GM, however, contends that plaintiffs are required to exhaust contractual grievance and arbitration procedures and/or administrative remedies prior to bringing their claims.

Initially the Court would note that it is undisputed that there are internal grievance procedures available under the National Agreement and that these procedures were not exhausted by plaintiffs in relation to the instant claims.  However, none of the terms of the National Agreement, with the exception of the definition of seniority, have any relation to the terms of the SAP at issue in this case.  Further, plaintiffs have stated that they "do not base their claims on 'seniority' but rather on credited service."  Plaintiffs' Motion for Partial Summary Judgment at 18.

Accordingly, the Court finds that plaintiffs were not required to exhaust any of the internal grievance procedures available under the National Agreement in relation to the instant claims.

Further, it is undisputed that the terms of the SAP[8] by themselves do not set forth any grievance procedures or appeal rights. "An implicit assumption to the exhaustion of administrative remedies requirement is that such remedies are available. Where no such procedure exists it is implausible that such a procedure must be exhausted." *Leonard v. The Ben Hogan Co.*, No. 92-48-CIV-FTM-17D, 1992 U.S. Dist. LEXIS 9609, at *7 (M.D. Fla. July 1, 1992). Because the SAP does not set forth any grievance procedures or appeal rights, the Court finds that there is no exhaustion requirement in relation to the SAP.

Finally, GM asserts that since the Pension Plan, a plan governed by the Employee Retirement Income Security Act ("ERISA"), defines credited service, plaintiffs are required to exhaust the Pension Plan's appeal procedure prior to bringing the instant claims. ERISA contains no explicit exhaustion requirement; however, the Tenth Circuit has found that "exhaustion of administrative (i.e., company-or plan-provided) remedies is an implicit prerequisite to seeking judicial relief." *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998) (internal quotations and citation omitted).

> Nevertheless, [b]ecause ERISA itself does not specifically require the exhaustion of remedies available under pension plans, courts have applied this requirement as a matter of judicial discretion. In exercising that discretion, district courts have eschewed exhaustion under two limited circumstances: first, when resort to administrative remedies would be futile; or, second, when the remedy provided is inadequate.

*Id.* (internal quotations and citations omitted).

---

[8]It is undisputed that the SAP is not an ERISA plan.

8

Having carefully reviewed the parties' submissions, the Court, exercising its discretion, finds that plaintiffs are not required to exhaust any administrative remedies set forth in the Pension Plan prior to bringing the instant claims.  First, the Court finds that it is not clear that the Pension Plan's administrative remedies would even apply to plaintiffs' claims.  While the SAP states that the options available under the plan are determined solely by the provisions of the Pension Plan and a number of other documents, no where in the SAP are the administrative remedies of the Pension Plan specifically incorporated.  Second, the Court finds that it is not clear that the Pension Plan's appeal board would have any authority to decide any non-pension matters.  Third, the Court finds that any appeal through the Pension Plan likely would only address plaintiffs' credited service under the Pension Plan itself and would not address whether the alleged oral agreement is incorporated into the SAP and, therefore, affects the definition of credited service in relation to Option 4 of the SAP.  The Court, thus, finds that any remedy provided by an appeal through the Pension Plan would be inadequate.  Additionally, the Court finds that it would be inappropriate and not in the interests of justice to require plaintiffs to exhaust their administrative remedies under the Pension Plan because the notices reducing plaintiffs' credited service contained no statements advising plaintiffs that said determination was made pursuant to the Pension Plan or advising plaintiffs of any appeal rights or other procedures by which they could appeal said determination.  In fact, according to plaintiffs, they did not know that GM contended that the Pension Plan's appeal rights applied to the credited service determinations until they received GM's discovery responses in this case.

Accordingly, the Court finds that plaintiffs should be granted summary judgment as to GM's failure to exhaust defense.

2.      Breach of contract

Plaintiffs assert that they each had more than ten years of credited service and that GM breached the SAP by failing to pay them the $140,000 severance payment under Option 4 of the SAP.  Having carefully reviewed the parties' submissions, the Court finds that there is a genuine issue of material fact as to whether plaintiffs each had more than ten years of credited service.  Accordingly, the Court finds that neither plaintiffs nor GM is entitled to summary judgment as to plaintiffs' federal breach of contract claim.

GM additionally asserts that plaintiffs' breach of contract claim is barred because the alleged oral agreement upon which plaintiffs rely conflicts with and is contrary to the Pension Plan.  In support of this assertion, GM relies upon *Miller v. Coastal Corp.*, 978 F.2d 622 (10th Cir. 1992) and *Straub v. W. Union Tel. Co.*, 851 F.2d 1262 (10th Cir. 1988).  Both of these cases, however, are distinguishable from the instant action.  In *Miller* and *Straub*, the plaintiffs were attempting to receive certain benefits under ERISA plans based upon alleged informal modifications of said plans. In the case at bar, plaintiffs are not seeking benefits under the Pension Plan but are seeking benefits, i.e. severance payments, under the SAP, which is not an ERISA plan.  While the definition of credited service under the alleged oral agreement does appear to conflict with the definition of credited service set forth in the Pension Plan, at this stage of the litigation, it is still unclear whether the Pension Plan's definition or the alleged oral agreement's definition applies to the determination of plaintiffs' credited service in relation to the amount of severance payment available under Option 4 of the SAP.  Accordingly, the Court finds that GM is not entitled to summary judgment based upon any alleged conflict with the Pension Plan.

3.      Promissory estoppel

To establish an enforceable contract based on promissory estoppel under federal common law, "a plaintiff must show (1) that the defendant made a promise, (2) that the defendant reasonably should have expected to induce the promisee's reliance, (3) that the promise actually induced such reliance, (4) that the reliance was reasonable, and (5) that injustice can be avoided only by enforcement of the promise." *Local 107 Office & Prof'l Employees Int'l Union v. Offshore Logistics, Inc.*, 380 F.3d 832, 834 (5th Cir. 2004).

Having carefully reviewed the parties' submissions, the Court finds that there are genuine issues of material fact as to the elements of plaintiffs' promissory estoppel claim.  Specifically, the Court finds that there is a genuine dispute as to whether GM made the alleged oral agreement, whether GM reasonably should have expected to induce plaintiffs' reliance, whether any reliance by plaintiffs was reasonable, and whether injustice can be avoided only by enforcement of the promise.  Additionally, for the reasons set forth in subsection III(B)(2), the Court does not find that plaintiffs' promissory estoppel claim should be barred based upon any alleged conflict with the Pension Plan.

Accordingly, the Court finds that neither plaintiffs nor GM is entitled to summary judgment as to plaintiffs' federal promissory estoppel claim.

4.      Breach of the duty of fair representation

In order to state a valid hybrid claim under Section 301 of the LMRA, a plaintiff must be able to prove both that there was a breach of the collective bargaining agreement by the company as well as an accompanying breach of the union's duty of fair representation in relation to the breach of the agreement.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983).  Having

carefully reviewed the parties' submissions, the Court finds that plaintiffs have not presented sufficient evidence to create a genuine issue of material fact as to whether the Union had any duty with respect to disputes regarding the SAP.  In fact, in their Second Amended Complaint, plaintiffs state: "[t]here is no grievance or other procedure applicable to the [SAP] controlling determination of credited service", Second Amended Complaint at ¶ 28(C); that the Union attempted to grieve the matter at issue, *id.* at ¶ 32; and "[t]he Union is set out as a nominal party since the Union did not refuse to process grievances apart from its determination, confirmed by GM, that there were no grievance procedures applicable", *id.* at ¶ 35.  Further, in their motion for partial summary judgment, plaintiffs set forth the following "Uncontested Facts":

> 33.   There is no grievance right under the CBA to challenge the determination of credited service for SAP Option 4.
>
>      *    *    *
>
> 35.   Nonetheless, the Union attempted a grievance as to the amount of severance pay for the Plaintiffs, but GM would not allow it.
>
>      *    *    *
>
> 40.   As to the pension system, the Union has a conflict of interest and cannot represent the individual bringing an appeal.

Plaintiffs' Motion for Partial Summary Judgment at 13-15.

Accordingly, because the Court finds that plaintiffs have not demonstrated that the Union had any duty with respect to disputes regarding the SAP, the Court finds that plaintiffs necessarily cannot show that the Union breached any duty of fair representation.  Therefore, the Court finds that the Union is entitled to summary judgment as to plaintiffs' breach of the duty of fair representation claim.

IV.     CONCLUSION

For the reasons set forth above, the Court:

(A)     GRANTS IN PART and DENIES IN PART plaintiffs' Motion for Partial Summary
        Judgment [docket no. 60] as follows:

        (1)     the Court GRANTS the motion for partial summary judgment as to GM's
                affirmative defenses of failure to exhaust and release, and

        (2)     the Court DENIES the motion for partial summary judgment as to plaintiffs'
                state law claims and federal claims;

(B)     GRANTS the Union's Motion for Summary Judgment [docket no. 61]; and

(C)     GRANTS IN PART and DENIES IN PART GM's Motion for Summary Judgment
        [docket no. 63] as follows:

        (1)     the Court GRANTS the motion for summary judgment as to plaintiffs' state
                law claims for breach of contract, tortious breach of contract, promissory
                estoppel, and failure to pay compensation, and

        (2)     the Court DENIES the motion for summary judgment as to plaintiffs' federal
                claims for breach of contract and promissory estoppel.

**IT IS SO ORDERED this 31st day of March, 2009.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE